IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| DR. AWANNA LESLIE and<br>BETTYE RICHARDSON,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>HANCOCK COUNTY BOARD OF<br>EDUCATION, GWENDOLYN REEVES,<br>*et al.*,<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) CIVIL ACTION NO. 5:11-CV-497(MTT)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER

This matter is before the Court on the Defendants' Motion to Dismiss. (Doc. 3). The Plaintiffs claim their constitutional rights were violated when the Defendants fired one and demoted the other for their speech. In lieu of filing an answer, the Defendants have moved to dismiss the Plaintiffs' claims, essentially on the grounds that their claims are barred by qualified immunity. For the reasons discussed below, the Motion is **DENIED**.

### I. PROCEDURAL AND FACTUAL HISTORY

In 2010, Plaintiffs Awanna Leslie and Bettye Richardson were employed by the Hancock County School District and, they allege, by Defendant Hancock County Board of Education. (Doc. 1 at 3; Doc. 3-1 at 1). Leslie was the Superintendent of Schools, and Richardson was an Assistant Superintendent. The Plaintiffs allege that, in early 2009, they discovered that Hancock County's Tax Commissioner had been collecting

property taxes at a "severely deficient rate." (Doc. 1 at 3). Because of "the deficient tax collections," the Hancock County School System was under-funded. (Doc. 1 at 3). Further, they allege, the Tax Commissioner failed to provide adequate projections of tax revenues to the Plaintiffs, making it difficult to prepare a budget for the Hancock County School District.

According to the Plaintiffs, in 2009 and 2010, they publically expressed their concerns regarding the Tax Commissioner's malfeasance and its effect on funding for the Hancock County School District. Leslie made public comments concerning the deficient property tax collection rate at three Hancock County Board of Education meetings. (Doc. 1 at 3). Leslie also made public comments concerning the deficient property tax collection rate at "Hancock County Tax Commission hearings." (Doc. 1. at 4). Further, Leslie made comments regarding the deficient property tax collection rate that appeared in the Atlanta Journal-Constitution.[1]

Richardson alleges she accompanied Leslie on her trips to the Hancock County Tax Commissioner's office, and also publically criticized the Tax Commissioner's deficient tax collection rate. (Doc. 1 at 5). The Plaintiffs allege that the Defendants knew of the Plaintiffs' public comments "exposing the deficient tax collection rate," and at all times were aware the Plaintiffs were speaking publically "on matters of public concern." (Doc. 1 at 4).

In the fall of 2010, voters elected five new Hancock County Board of Education members, a complete turnover. According to the Plaintiffs, the new Board members are

---

[1] It is unclear from the complaint whether Leslie made these comments specifically to the Atlanta Journal-Constitution.

sympathetic to the Tax Commissioner, and the new Board of Education chair, Defendant Gwendolyn Reeves, is the Tax Commissioner's sister-in-law. (Doc. 1 at 4). Then, in January 2011, the Defendants "acting as the Hancock County Board of Education" fired Leslie from her position as Superintendent of the School System. (Doc. 1 at 4). Leslie alleges the Defendants provided no justification for terminating her. Further, Defendant Reeves recommended Richardson's demotion to Gifted Coordinator and then eventually to an elementary school teaching position. In April 2011, the Board of Education, acting on Defendant Reeves' recommendation, demoted Richardson. The Plaintiffs allege that the newly elected Board of Education members, who were politically aligned with the Tax Commissioner, fired and demoted them because of their public criticism of the Tax Commissioner.

The Plaintiffs filed this action pursuant to 42 U.S.C. §§ 1983 and 1988, alleging retaliation for the exercise of their First Amendment rights.

## II.  MOTION TO DISMISS STANDARD

The Defendants have moved to dismiss the Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) because the Plaintiffs' speech, as alleged in the complaint, is not protected by the First Amendment. Therefore, the Defendants argue, the Plaintiffs' complaint fails to state a federal claim upon which relief can be granted. The Defendants further contend that even if the Plaintiffs' speech is protected, the individual Defendants are entitled to qualified immunity from the Plaintiffs' § 1983 claims.

In order to survive a motion to dismiss, a complaint does not need to contain "detailed factual allegations," but must "give the defendant[s] fair notice of what the …

claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). To avoid dismissal pursuant to Rule 12(b)(6), a complaint must contain specific facts to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). Further, "at the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006).

However, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 (citing Fed. R. Civ. P. 8(a)(2)). "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). And where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

### III. FIRST AMENDMENT RETALIATION CLAIMS

**A.      Defendant Hancock County Board of Education**

Defendant Hancock County Board of Education, in a brief footnote, suggests that it is not an entity capable of being sued. The Board of Education cites *Cook v. Colquitt County Board of Education*, 261 Ga. 841, 412 S.E.2d 828 (1992), for the principle that under Georgia law the school district, not the school board, is the party with the capacity

to be sued. If the Board of Education is an improper party, that issue will be addressed on proper motion, most likely by substitution of parties.

**B.     Defendants Gwendolyn Reeves, Anthony Gilchrist, Denise Ransom, Annie Ingram, Azzalee Williams-Askew and Pamela Lawrence-Ingram**

   **1. Individual Capacity Claims**

The Plaintiffs bring claims pursuant to 42 U.S.C. § 1983 against Defendants Gwendolyn Reeves, Anthony Gilchrist, Denise Ransom, Annie Ingram, Azzalee Williams-Askew and Pamela Lawrence-Ingram in their individual capacities. Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Section 1983 itself does not create any protected rights, but instead provides a remedy for constitutional violations committed under color of state law. The relevant inquiry under § 1983 then is whether a right secured by the Constitution has been violated. Even if a constitutional violation has occurred, however, a defendant may still be protected by qualified immunity. "Qualified immunity offers complete protection for individual public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sherrod v. Johnson*, 667 F.3d 1359, 1363 (11th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all

but the plainly incompetent or one who is knowingly violating federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotations and citation omitted).[2]

A threshold determination in the qualified immunity analysis is whether the official was acting within the scope of his discretionary authority when the alleged constitutional violation occurred. *Case v. Eslinger*, 555 F.3d 1317, 1325 (11th Cir. 2009). If a defendant establishes that he was performing a discretionary function, the burden shifts to the plaintiff to demonstrate (1) that there was a violation of a constitutional right and (2) that the constitutional right was clearly established at the time of the incident. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).[3]

It is clear that the Defendants were acting within their discretionary authority when terminating Leslie and demoting Richardson. Therefore, the Court must determine whether the Plaintiffs' complaint sufficiently establishes a constitutional violation, and if so whether the right violated was clearly established at the time of the incident.

### (a) Constitutional Violation

The Plaintiffs allege that newly elected Board members, who were politically aligned with the Tax Commissioner, fired and demoted them because of their public

---

[2] The Court notes that if it is not clear from the allegations in the complaint that the Defendants are entitled to qualified immunity, then the case will proceed to the summary judgment stage, which is the "most typical juncture at which defendants entitled to qualified immunity are released from the threat of liability and the burden of further litigation." *Johnson v. Breeden*, 280 F.3d 1308, 1317 (11th Cir. 2002); *see also Taylor v. Dean*, 2006 WL 4756452, * 6 (M.D. Fla.).

[3] The Supreme Court has stated that district courts and courts of appeals have discretion in deciding which of these two prongs to address first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

criticism of the Tax Commissioner, and thus violated their First Amendment free speech rights.

"The law is well-established that a [public] employee may not be discharged in retaliation for speech protected under the First Amendment." *Vila v. Padron*, 484 F.3d 1334, 1339 (11th Cir. 2007); *see also Connick v. Myers*, 461 U.S. 138, 142 (1983) ("a state cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression"). However, a public employee's freedom of speech is not absolute. *Vila*, 484 F.3d at 1339. The United States Supreme Court, in *Pickering v. Board of Education*, 391 U.S. 563 (1960) and *Connick v. Myers*, 461 U.S. 138 (1983), established a four-part test, commonly called the *Pickering* test, to determine whether retaliation against a public employee for her speech violates the First Amendment. *See e.g. Cook v. Gwinnett County School Dist.*, 414 F.3d 1313, 1318 (11th Cir. 2005); *McKinley v. Kaplan*, 262 F.3d 1146, 1149-50 (11th Cir. 2000). Pursuant to this test, to properly allege a First Amendment retaliation claim, a public employee must show "(1) she was speaking as a citizen on a matter of public concern; (2) her interests as a citizen outweighed the interests of the [government] as an employer; and (3) the speech played a substantial or motivating role in the adverse employment action. If the plaintiff establishes these elements, the burden shifts to the defendant to prove (4) it would have made the same adverse employment decision absent the employee's speech." *Vila*, 484 F.3d at 1339.

The Defendants focus on the first and second elements of the *Pickering* test. First, the Defendants assert that the Plaintiffs were not speaking as citizens on a matter of public concern, but rather, their speech was made pursuant to their official duties as

public employees. Second, the Defendants assert that, even if the Plaintiffs were speaking as private citizens on a matter of public concern, the Defendants' interests in prohibiting the speech outweigh the Plaintiffs' First Amendment interests.

### (1) Speaking as Citizens on a Matter of Public Concern

The Supreme Court has emphasized that "when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest,…" the law does not allow the employee to "constitutionalize" her personal grievance. *Connick*, 461 U.S. at 147, 154. Further, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 422 (2006). Thus, although "public employees do not surrender all their First Amendment rights by reason of their employment," there are limits on the employees' free speech protections. *Id.* at 417.

Despite these limitations, the Supreme Court has emphasized the "necessity for informed, vibrant dialoged in a democratic society" particularly in employee-speech jurisprudence. *Garcetti*, 547 U.S. at 419. Because public employees are often "the members of the community most likely to have informed definite opinions" regarding the inner-workings of the government and its process, it is vital that these individuals are not restrained by fear of retaliatory conduct by its public employer. *Id.* at 433; *Pickering*, 391 U.S. at 572. Further, whether the speech occurred at the workplace and whether the speech concerns the subject matter of the employee's job are relevant, but non-dispositive factors in this inquiry. *See Garcetti*, 547 U.S. at 420-421.

The Defendants, relying primarily on *Garcetti*, argue that the Plaintiffs' speech was made pursuant to their official duties as Superintendent and Assistant Superintendent. The term "official duties" describes the "daily professional activities" which constitute the tasks the employee was paid to perform. *Garcetti*, 547 U.S at 422; *see also Moore v. Gabriel*, 2007 WL 917291, *5 n. 5 (M.D. Ga.). Whether an employee is acting pursuant to her official duties is a "practical" inquiry, and the Court must determine what those duties actually are. *Id.* at 425. Speech made pursuant to an employee's official duties is speech that "owes its existence to the public employee's professional responsibilities" or speech that "the employer itself commissioned or created." *Id.* at 421-422. On the other hand, if a public employee engages in speech that is "the kind of activity engaged in by citizens who do not work for the government," rather than speech made pursuant to their official duties, the speech is afforded First Amendment protection. *Id.* at 423.

Here, the Plaintiffs engaged in public criticism of an elected official not associated with Hancock County School District. The only apparent connection between the Tax Commissioner's property tax collection and the Plaintiffs' official duties as Superintendent and Assistant Superintendent is School District funding. Clearly, the Tax Commissioner's alleged deficient performance of his duties had an impact on the School District generally, and the Plaintiffs' performance of their job duties. But, based on the sparse record here, the Court cannot conclude that the Plaintiffs' criticism is "speech that owes its existence" to their professional responsibilities, or that their speech was speech "created" or "commissioned" at the bequest of their employer. The Plaintiffs' speech was not made internally within the confines of their employment or

workplace. Instead, the Plaintiffs expressed themselves concerning the tax collection rates at two public forums— the Hancock County Board of Education meetings and the Hancock County Tax Commissioner meetings.[4] Moreover, the subject matter of the speech—the allegation that the Tax Commissioner was collecting property taxes at a severely deficient rate—is undisputedly a matter of public concern.

In short, the Plaintiffs allege their speech was not made pursuant to their official duties as Superintendent and Assistant Superintendent, but instead was made as citizens expressing an opinion on a matter of public concern. While it may be that a more complete record could lead to the conclusion that the Plaintiffs' public criticism of an independent elected official was within the scope of their job duties, based on the allegations of the complaint, that conclusion is not possible. The record is not now sufficient to establish as a matter of law that the Plaintiffs' speech was not protected by the First Amendment.

### (2) The Balancing Test

The second prong of the *Pickering* test requires the Court to employ a balancing test. The Court must determine whether the Plaintiffs' interests in engaging in the speech outweigh the Defendants' interests in prohibiting the speech. *Pickering*, 391 U.S. at 568. In making this determination, it is important to consider "whether the speech at issue impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and

---

[4] The Court recognizes that a Hancock County Board of Education meeting is likely a meeting at which the Plaintiffs appeared in their official capacities as Superintendent and Assistant Superintendent. However, a Board of Education meeting is still a public forum, open to private citizens, and the Plaintiffs' speech in those meetings, as alleged, related to the Tax Commissioner and not official business.

confidence are necessary, or impedes performance of the speaker's duties or interferes with the regular operation of the enterprise." *Id.* at 457-58 (internal quotations and citation omitted).

Typically, this inquiry is particularly ill-suited to resolution at the motion to dismiss stage, dependent as it is on a record of the consequences of the speech on the workplace. However, the Defendants argue that this balancing test should be "struck differently" in this case because the Plaintiffs are "public employee[s] in policymaking position[s]." (Doc. 3-1 at 11). They cite *Foote v. Town of Bedford*, 642 F.3d 80 (1st Cir. 2011) which applies the rationale of two United States Supreme Court "political affiliation" cases[5] that permit a government employer to take adverse employment action against policymaking employees for whom "party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti v. Frinkel*, 445 U.S. 507, 518 (1980). In *Foote*, the First Circuit extended this notion and held that "[i]n public employee/public speech cases involving policymakers, [the *Elrod/Branti*] principles ordinarily will tip the balance in favor of the government as a matter of law." *Foote*, 642 F.3d at 84. Thus, the Defendants argue that because the Plaintiffs' are policymakers, the balancing test should tip in favor of the Defendants' interest in prohibiting the Plaintiffs' speech.[6]

---

[5] *Elrod v. Burns*, 427 U.S. 347 (1976) and *Branti v. Frinkel*, 445 U.S. 507 (1980).

[6] The Plaintiffs failed to respond to the Defendants' argument that *Elrod/Branti* principles should be extended to public employee speech cases. Given that these principles, if applied, would likely be dispositive of the Plaintiffs' claims, the Plaintiffs may want to rethink this strategy in future briefings.

At this stage, the Court is unable to discern whether the Plaintiffs are indeed policymakers to the extent the Defendants suggest. Further, the Eleventh Circuit has not applied the *Elrod/Branti* principles to public employee speech cases. Therefore, the Court will not decide *Elrod/Branti*'s application to the Plaintiffs' speech at this time. Accordingly, the Court will apply the traditional balancing test to determine whether the Plaintiffs' speech is entitled to First Amendment protection. *See Pickering v. Board of Education*, 391 U.S. 563 (1968).

Here, there is no allegation that the Plaintiffs interacted with the Tax Commissioner on a daily basis. Probably because they are constrained by the allegations of the complaint, the Defendants have not set forth any specific detrimental impact that the Plaintiffs' speech had on their daily duties as Superintendent and Assistant Superintendent. The Plaintiffs made no statements that were critical of their employers, the Hancock County Board of Education and its members. Further, the Plaintiffs spoke outside the workplace at open Board of Education and Tax Commission meetings. There are no allegations that the Plaintiffs' speech regarding the Tax Commissioner's deficient property tax collections disrupted their work environment. The Defendants allege that the newly elected Board of Education members disagreed with the Plaintiffs' opinion regarding the Tax Commissioner. However, disagreeing with the content of the public employees' speech is not enough to tip the balance in the Defendants' favor when there is no allegation the Plaintiffs' work environment or performance of their job duties were disrupted because of the speech. Accordingly, based on the allegations of the complaint, the Court cannot conclude that the Plaintiffs'

interests in their speech are outweighed by the Defendants' interests in restricting the speech.

### (b) Clearly Established Law

To overcome the Defendants' qualified immunity defense, the Plaintiffs must show that the right the Defendants allegedly violated was clearly established at the time of the alleged violation. "To demonstrate that the law is clearly established, a party is not required to cite cases with materially similar facts…. Rather, the state of the law at the time of the unconstitutional act must be established sufficiently to give fair warning to the official that his conduct is unlawful." *Akins v Fulton County, Ga.*, 420 F.3d 1293, 1305 (11th Cir. 2005). Here, the Plaintiffs must show that the law was clearly established as to the protected status of their speech.

The Court has determined that the Plaintiffs' allegations are sufficient, in response to a motion to dismiss, to establish that their speech was protected. The speech clearly relates to a public concern—the Tax Commissioner's deficient collection of property taxes. Further, it is clear that a "core concern" of the First Amendment is the protection of those individuals who expose government wrongdoing. *Akins*, 420 F.3d at 1304. Accordingly, the state of the law is such that the Defendants had notice that (1) the Plaintiffs' speech related to matters of public concern, (2) the Plaintiffs' interest in the speech outweighed the Defendants' interest in restricting the speech, and (3) if they fired and demoted the Plaintiffs because they engaged in protected speech, they could be liable for damages pursuant to § 1983. *See id.; see also Vila*, 484 F.3d at 1339 ("The law is well-established that a [public] employee may not be discharged in retaliation for speech protected under the First Amendment.").

Accordingly, the Plaintiffs have met the minimal pleading requirements necessary to survive a Rule 12(b)(6) motion with regard to the Plaintiffs' § 1983 claims against the Defendants in their individual capacities.  The Defendants' Motion to Dismiss is **DENIED** with regard to the Plaintiffs' First Amendment retaliation claims against the Defendants in their individual capacity.[7]

### 2. Official Capacity Claims

The Plaintiffs also assert § 1983 claims against each Defendant in his or her official capacity.  Although the Defendants do not address these claims in their Motion, it is nevertheless appropriate for the Court to address these claims.  Accordingly, to the extent that the complaint can be read to assert claims for monetary damages against the Defendants in their official capacities, those claims are **DISMISSED.**

However, the Plaintiffs also seek "Preliminary and Permanent Injunctions [ ] requiring the Defendants to purge their files of all documents reflecting actions taken against each Plaintiff for unconstitutional reasons, including but not limited to their improper terminations and demotions…."   (Doc. 1 at 6).  Claims for injunctive relief are not barred by the Eleventh Amendment.  *Cross v. State of Alabama*, 49 F.3d 1490,

---

[7] Perhaps in recognition of the difficulty in arguing that no clearly established law protected the Plaintiffs' alleged public speech, the Defendants argue that it would have been reasonable for the Defendants to assume that the Eleventh Circuit would apply *Elrod/Branti* principles to public employee speech by policymaking individuals and thus, the Defendants would have reason to think that they could have retaliated against the Plaintiffs for their public speech.  This is an interesting argument, asking as it does that the Court rule that non-established law (at least in this Circuit) was sufficiently established to establish that no clearly established law protected the Plaintiffs' public speech.  This argument too can be revisited when the record is more established, but the Court is not prepared to accept it at this time.

1503 (11th Cir. 1995).  Therefore, the Plaintiffs' § 1983 claims for injunctive relief against the Defendants in their official capacities shall remain pending.

### III. CONCLUSION

Accordingly, the Defendants' Motion to Dismiss is **DENIED**.  (Doc. 3).

**SO ORDERED**, this the 27th day of June, 2012.

                    S/ Marc T. Treadwell
                    MARC T. TREADWELL, JUDGE
                    UNITED STATES DISTRICT COURT