IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| DR. AWANNA LESLIE and<br>BETTYE RICHARDSON,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>HANCOCK COUNTY SCHOOL<br>DISTRICT,<br><br>　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)  CIVIL ACTION NO. 5:11-CV-497(MTT)<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER

Defendant Hancock County School District has renewed its motion to dismiss upon the return of this case from the Eleventh Circuit. (Doc. 23). Overruling this Court, the Eleventh Circuit held that the individual members of the Hancock County School Board were entitled to qualified immunity. *Leslie v. Hancock Cnty. Bd. of Educ.*, 720 F.3d 1338, 1352 (11th Cir. 2013). The Eleventh Circuit refused to exercise jurisdiction over the School District's appeal from this Court's order denying its motion to dismiss. Nevertheless, the School District now contends that the Eleventh Circuit's decision requires the dismissal of the Plaintiffs' claims against it. For the following reasons, the motion is **DENIED**.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Dr. Awanna Leslie and Bettye Richardson were employed by the School District as the Superintendent and Assistant Superintendent, respectively, of schools. (Doc. 1 at ¶ 5). In early 2009, the Plaintiffs allege they discovered Hancock County's

Tax Commissioner had been collecting property taxes at a "severely deficient rate." (Doc. 1 at ¶ 6). The Plaintiffs assert that "the deficient tax collections" led to the underfunding of the School District and "made it impossible for the Plaintiffs to adequately perform their duties as administrators" of the School District. (Doc. 1 at ¶¶ 6-7). The Plaintiffs further allege the Tax Commissioner "failed to provide adequate projections of tax revenue," causing the Plaintiffs difficulty with preparing the School District's budget. (Doc. 1 at ¶ 8).

According to the Plaintiffs, throughout 2009 and 2010, they publically expressed their concerns regarding the Tax Commissioner's deficient collection of property taxes and its effect on funding for the School District. (Doc. 1 at ¶ 9). Leslie made comments concerning the deficient property tax collection rate at three public Hancock County Board of Education meetings. (Doc. 1 at ¶ 10). Leslie also made statements concerning the deficient property tax collection rate at a Hancock County Tax Commission hearing. (Doc. 1 at ¶ 11). Further, Leslie made comments regarding the deficient property tax collection rate that appeared in the *Atlanta Journal-Constitution*.[1] Richardson alleges she accompanied Leslie on her trips to the Hancock County Tax Commissioner's office and also publically criticized the Tax Commissioner's deficient tax collection rate. (Doc. 1 at ¶ 17).

The Plaintiffs' public comments about deficient tax collections referred only to the Tax Commissioner, and there is no indication in the sparse record that their comments led to any difficulties with the Hancock County School District or the members of the

---

[1] It is unclear from the complaint whether Leslie made these comments specifically to the Atlanta Journal-Constitution.

Board of Education.  That changed, however, after voters replaced all five members of the Board of Education in the Fall 2010 elections.  (Doc. 1 at ¶ 14).  The newly elected Board Chair, Gwendolyn Reeves, was the Tax Commissioner's sister-in-law, and the remaining new Board members were "sympathetic" to the Tax Commissioner.  (Doc. 1 at ¶ 14).  On January 29, 2011, the Board of Education terminated Leslie allegedly without providing any justification.  (Doc. 1 at ¶ 15).  Richardson alleges that, based on Reeves's recommendations, she was twice demoted before being terminated on April 7, 2011.  (Doc. 1 at ¶¶ 18-19).

The Plaintiffs then filed this action pursuant to 42 U.S.C. §§ 1983 and 1988, alleging the Board of Education fired them in retaliation for the exercise of their First Amendment right of free speech.

## II.  DISCUSSION

### A.  Motion to Dismiss Standard of Review

To avoid dismissal pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain specific factual matter to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."  *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006) (internal quotation marks and citation omitted).  However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679.  "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions

masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).  Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts. *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993) (citation omitted).

### B.     First Amendment Speech Retaliation Claims

"The law is well-established that a [public] employee may not be discharged in retaliation for speech protected under the First Amendment."  *Vila v. Padron*, 484 F.3d 1334, 1339 (11th Cir. 2007) (citing *Rankin v. McPherson*, 483 U.S. 378, 383 (1987)). The United States Supreme Court, in *Pickering v. Board of Education*, 391 U.S. 563 (1960) and *Connick v. Myers*, 461 U.S. 138 (1983), established a four-part test, commonly called the *Pickering* test, to determine whether retaliation against a public employee for her speech violates the First Amendment.  *See, e.g.*, *Cook v. Gwinnett Cnty. Sch. Dist.*, 414 F.3d 1313, 1318 (11th Cir. 2005).  Pursuant to this test, a public employee must show:

> (1) she was speaking as a citizen on a matter of public concern; (2) her interests as a citizen outweighed the interests of the [government] as an employer; and (3) the speech played a substantial or motivating role in the adverse employment action.  If the plaintiff establishes these elements, the burden shifts to the defendant to prove [(4)] it would have made the same adverse employment decision absent the employee's speech.

*Vila*, 484 F.3d at 1339 (citations omitted).

The relative simplicity of the *Pickering* test has been made more complicated in some circuits by the extension of the Supreme Court's patronage and political affiliation decisions to speech retaliation cases.  Generally, a government employer may not terminate an employee just because of political party affiliation.  However, the Supreme Court has carved out an exception to this rule – "policymaking" or "confidential"

employees can be terminated for political disloyalty. *Elrod v. Burns*, 427 U.S. 347, 367 (1976). This exception is premised on the need for political loyalty among those employees who are "in a position to thwart the goals" and "policies presumably sanctioned by the electorate" of a newly elected administration. *Id.* The "holding" in *Elrod* that policymaking or confidential employees can be discharged for political affiliation comes not from a majority opinion but rather from Justice Stewart's concurrence. *Id.* at 375. However, no opinion in *Elrod* defined what constituted a policymaker or confidential position.

The Supreme Court later clarified, or at least seemed to clarify, that the label of policymaker or confidential employee was not dispositive: "The ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti v. Finkel,* 445 U.S. 507, 518 (1980). "[P]arty affiliation is not necessarily relevant to every policymaking or confidential position." *Id.* However, this qualification of *Elrod*, if that is what it was, has been written off by some as dicta. *See Underwood v. Harkins*, 698 F.3d 1335, 1339 (11th Cir. 2012) (citing Christopher V. Fenlon*, The Spoils System in Check? Public Employees' Right to Political Affiliation & the Balkanized Policymaking Exception to § 1983 Liability for Wrongful Termination*, 30 Cardozo L. Rev. 2295, 2310 & n.61 (2009)). Still, the Eleventh Circuit recently noted that "the Supreme Court has summarized *Elrod* and *Branti* as standing for the proposition that '[g]overnment officials may not discharge public employees for refusing to support a political party or its candidates, *unless political affiliation is a reasonably appropriate requirement for the job*

*in question.*'"  *Id.* (alteration in original) (emphasis added) (quoting *O'Hare Truck Serv., Inc. v. City of Northlake*, 518 U.S. 712, 714 (1996)).

*Elrod/Branti*, as it is typically called, applies to a relatively narrow issue – firings for political affiliation.  Even in that small field, its jurisprudence is "at best, muddled" and "'can best be described as a legal morass.'"  *Id.* at 1338, 1340 (quoting *Randall v. Scott*, 610 F.3d 701, 710 (11th Cir. 2010)).  Notwithstanding this muddle and morass and the absence of direction from the Supreme Court, several circuit courts have extended *Elrod/Branti* to the much larger field of cases involving government employees who are terminated for their speech.  As the Eleventh Circuit noted in *Leslie*, the paths taken by these courts have been far from consistent.

### C.  The Eleventh Circuit's Holdings

As noted, the School District contends the Eleventh Circuit's "factual findings" in the course of its qualified immunity analysis require this Court to grant its motion to dismiss.  It bears mention that this Court did not consider *Elrod/Branti* in its qualified immunity analysis because the Eleventh Circuit had not extended *Elrod/Branti* to speech retaliation cases.  This Court mistakenly reasoned that *Elrod/Branti* could not create uncertainty in the minds of public officials with regard to the state of the law in the Eleventh Circuit because the Eleventh Circuit had not applied *Elrod/Branti* to speech retaliation cases.  The Eleventh Circuit took a different approach.

The Eleventh Circuit made three holdings in *Leslie* that are pertinent to the renewed motion to dismiss.  First, in finding the individual Defendants were entitled to qualified immunity, the court held the law is not clearly established that a government employer can be held liable for retaliation against a policymaking or confidential

employee for speech about policy. *Leslie*, 720 F.3d at 1346. More specifically, the court stated, "[n]o clearly established law bars the termination of a policymaking or confidential employee for speaking about policy" because "[t]he correct application of the *Pickering* balance to a policymaking or confidential employee who speaks about policy is not established with [such] obvious clarity by the case law" to put a reasonable government official on notice that his actions would violate federal law.[2] *Id.* at 1349 (internal quotation marks omitted) (quoting *Loftus v. Clark-Moore*, 690 F.3d 1200, 1205 (11th Cir. 2012)).

Second, the Eleventh Circuit held that a local school superintendent in Georgia is a policymaking or confidential employee. *Id.* at 1351. Using this Circuit's "categorical" approach to the *Elrod/Branti* inquiry in political affiliation cases[3] and looking at Georgia law, the court found Leslie was an alter ego of the school board who acted as the board's agent and enforced its policies. *Id.* (citing O.C.G.A. § 20-2-109). The court also stated that Richardson conceded at oral argument her complaint "rises or falls" with Leslie's because she was a part of Leslie's leadership team, and her speech was in concert with Leslie's. *Id.* at 1349-50. Thus, Richardson was a policymaking or confidential employee as well.

---

[2] Without a doubt, if *Elrod/Branti* is factored in, the outcome of the qualified immunity analysis becomes clear – legal muddle and morass are very conducive to disposition on the grounds of qualified immunity.

[3] The extension of *Elrod/Branti* to speech retaliation cases arguably will have an even broader impact in this Circuit because of the Eleventh Circuit's categorical approach to the determination of whether a government employee is a policymaker. *See Underwood*, 698 F.3d at 1347 (Martin, J., dissenting) (stating that recent Supreme Court precedent, which instructed courts to evaluate an employee's actual duties rather than his formal job description in speech retaliation cases, casts doubt on the majority's use of the categorical approach and that reliance on the formal job description could "result in the excessive restriction of an employee's constitutional rights").

Third, the Eleventh Circuit determined the Plaintiffs' speech was about policy. *Id.* at 1352. The court stated, "The administration of local taxes and the effect of that administration on the local school district are quintessential policy matters." *Id.* The court further noted Leslie described her speech as being about policy when she argued her speech allowed the School District to operate more effectively. *Id.*

In holding that the law regarding termination of a policymaking or confidential employee for speech is not clearly established, the court discussed three approaches taken by other circuits considering the effect on the *Pickering* balance when the government employee is also a policymaker or confidential as defined by *Elrod/Branti*. However, the court neither adopted one of these approaches nor set forth its own. Thus, *Elrod/Branti* has not yet been applied to speech retaliation cases in this Circuit.

### D. The Eleventh Circuit's Holdings in *Leslie* Are Not Dispositive of the Plaintiffs' Claims Against the School District

The threshold question of a First Amendment speech retaliation claim is whether the employee spoke as a citizen on a matter of public concern. *Vila*, 484 F.3d at 1339. If this answer is no, the employee has no First Amendment cause of action, and no further inquiry is necessary. *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006) (citations omitted). *Garcetti* elaborates on the first element and holds, "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421.

The School District concedes the Eleventh Circuit did not hold that the Plaintiffs spoke pursuant to their official duties, and it does not ask the Court to define which *Elrod/Branti* permutation the Eleventh Circuit would apply if it were to extend

*Elrod/Branti* to speech retaliation cases. Rather, it asks the Court to resolve the case in its favor without further reference to *Elrod/Branti* by applying the Eleventh Circuit's "factual findings," which the School District contends are the law of the case, to the *Pickering* balance. Its argument is both unavailing and impractical.

Although the School District does not quite say it, it essentially is asking the Court to take an approach some say has been taken by the Sixth Circuit which, as the Eleventh Circuit noted in *Leslie*, has held "that where an employee is in a policymaking or confidential position and is terminated for speech related to political or policy views, the *Pickering* balance favors the government as a matter of law." *Id*. at 1348; *Rose v. Stephens*, 291 F.3d 917, 922 (6th Cir. 2002). However, even if the Court followed *Rose*, the present record still does not favor the School District as a matter of law. In *Rose*, the plaintiff's job was a position "for which political loyalty is a legitimate criterion." 291 F.3d at 923. When an employee holding such a position "*speaks in a manner that undermines the trust and confidence that are central to his position*, the balance definitively tips in the government's favor because *an overt act of disloyalty necessarily causes significant disruption* in the working relationship between a confidential employee and his superiors." *Id*. (emphasis added). In a footnote, the court noted this restriction on the application of *Elrod/Branti* to speech retaliation cases was necessary because a government employer who terminates "an employee for speech completely unrelated to the working relationship … would lack the justification that the speech impacted the efficient operation of the office," and the employer would not be protected under *Elrod/Branti*. *Id.* at 923 n.3. In that situation, the government employer's interest would not outweigh the employee's free speech rights. *Id*. The court's summary of its

holding makes clear that disloyal speech, not simply speech by a policymaker on policy, deprives a government employee of First Amendment protection: "In short, the rule we adopt today simply recognizes the fact that it is insubordination for an employee whose position requires loyalty to speak on job-related issues in a manner contrary to the position of his employer[.]"  *Id.* at 923.

Here, there is no evidence, yet, of disloyalty.  The Plaintiffs criticized the Tax Commissioner, not the School District or its Board of Education.  There is no evidence of insubordination, nor is there evidence their complaints about deficient tax collection in any way conflicted with any position or policy of their employer.  It may be that further development of the record will demonstrate the Plaintiffs' speech was disloyal, but for now, the record establishes, if anything, just the opposite; they claim they were shining light on government mismanagement that hurt the School District.

Apart from the absence of evidence of disloyalty, and although the Eleventh Circuit found the Plaintiffs to be policymakers, a policymaker who speaks about policy can speak as a citizen on a matter of public concern.  First, under the Eleventh Circuit's categorical approach to defining policymaking employees, the determination that an employee is a policymaker confers a fixed status on that employee.  This determination focuses on whether state or local law authorizes the employee to act as the alter ego of her employer and not on the employee's actual authority or daily duties.  *See Leslie*, 720 F.3d at 1351 (citations omitted) ("'[W]e look at the position in the abstract and at what state or local law allows a person in that position to do, and not a snapshot of the position as it is being carried out by a given person at a given point in time under a

given elected official' to determine whether an employee is the legal alter ego of her employer.").

The determination of whether an employee speaks as a citizen, on the other hand, is subject to a practical inquiry into the duties actually performed by the employee. *Garcetti*, 547 U.S. at 424-45. Because the parties in *Garcetti* did not dispute the employee's speech was made pursuant to his employment duties, the Supreme Court did not have "occasion to articulate a comprehensive framework for defining the scope of an employee's duties in cases where there is room for serious debate." *Id.* at 424. However, the Court rejected "the suggestion that employers can restrict employees' rights by creating excessively broad job descriptions." *Id.* at 424-35 ("Formal job descriptions often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes."). Similarly, when a public employee's official duties are in dispute, the Eleventh Circuit has rejected "narrow, rigid descriptions of official duties urged" by the employee and, instead, conducts a rigorous factual inquiry to determine whether, in the context of the entire record, the speech was made pursuant to the employee's actual duties. *See Abdur-Rahman v. Walker*, 567 F.3d 1278, 1284 (11th Cir. 2009). Thus, the Eleventh Circuit's categorical approach to determine whether an employee is a policymaker differs significantly from its factual approach to decide whether an employee speaks as a citizen.

Second, the fact that an employee spoke about policy, even if that employee is also a policymaker responsible for enforcing that policy, does not preclude finding the policy was also a matter of public concern. Both inquiries are speech-specific, but they do not necessarily involve the same concerns. *Compare Foote v. Town of Bedford*, 642 F.3d 80, 86 (1st Cir. 2011) (asking whether a public employee's speech in question was in conflict with his government employer's stated policies relating to the employer's work), *with Mitchell v. Hillsborough Cnty.*, 468 F.3d 1276, 1284 (11th Cir. 2006) (noting the speech's content was the most important factor in determining whether it conveyed a matter of public concern and focusing on whether the content communicated a subject of legitimate news or general interest). Of course, not all policies will be of value or concern to the public, including many internal operations or procedures of government employers, but many policies, particularly those that impact the public, will also be matters of public concern. For instance, "[t]he administration of local taxes and the effect of that administration on the local school district" are surely quintessential matters of public concern just as they are "quintessential policy matters." *Leslie*, 720 F.3d at 1352.

In short, the Eleventh Circuit's "factual findings" do not establish as a matter of law that the Plaintiffs were not speaking as citizens on a matter of public concern. Consequently, those findings are not sufficient, when applying existing Eleventh Circuit speech retaliation precedent, to tilt the *Pickering* balance in the School District's favor. Nor, in this Court's view, is it practical to attempt to resolve the legal issues in this case without recognizing that the Eleventh Circuit likely will apply some variation of *Elrod/Branti* to speech retaliation cases. In other words, this Court will have to take into

account the impact of the likely extension of *Elrod/Branti* by the Eleventh Circuit to that context.  The Court is unwilling to do so based on the sparse record now available. After development of the record, the School District can, if it thinks it appropriate, file a dispositive motion.

> **E.  The Plaintiffs' Complaint Sufficiently Alleges They Spoke as Citizens on a Matter of Public Concern**

Although the Eleventh Circuit's holdings do not require judgment in the School District's favor as a matter of law, the Court must still determine whether the Plaintiffs have sufficiently alleged they spoke as citizens on a matter of public concern.

The Supreme Court has emphasized that "when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest," the law does not allow the employee to "constitutionalize" her personal grievance.  *Connick*, 461 U.S. at 147, 154.  Government employers "enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary" when employee speech does not have any relation to or bearing on "any matter of political, social, or other concern to the community."  *Id.* at 146.

Conversely, the Supreme Court "has acknowledged the importance of promoting the public's interest in receiving the well-informed views of government employees engaging in civic discussion."  *Garcetti*, 547 U.S. at 419.  For example, "teachers are 'the members of a community most likely to have informed and definite opinions' about school expenditures."  *Id.* (quoting *Pickering*, 391 U.S. at 572).  "Were [public employees] not able to speak on [the operation of their employers], the community would be deprived of informed opinions on important public issues.  The interest at stake is as much the public's interest in receiving informed opinion as it is the

employee's own right to disseminate it." *San Diego v. Roe*, 543 U.S. 77, 82 (2004) (citation omitted).

Again, the "controlling factor" in *Garcetti* was that the statements were made pursuant to the plaintiff's job duties. 547 U.S. at 421. The Supreme Court defined speech made pursuant to an employee's job duties as "speech that owes its existence to a public employee's professional responsibilities[,]" and a product "the employer itself has commissioned or created." *Id.* at 421-22 (citation omitted). On the other hand, if a public employee engages in speech that is "the kind of activity engaged in by citizens who do not work for the government," rather than speech made pursuant to their official duties, the speech is afforded First Amendment protection. *Id.* at 423. The Court also identified as relevant two factors, although the Court noted they are non-dispositive when considered in isolation: (1) whether the statements were made in the office or publicly and (2) whether the statements concerned the subject matter of the plaintiff's employment. *Id.* at 420-21. As discussed above, *Garcetti* directs courts to conduct a practical inquiry into the duties actually performed by the employee. *Id.* at 424. Instead of relying on formal job descriptions, the Court should look to "the content, form, and context of a given statement, as revealed by the whole record." *Abdur-Rahman*, 567 F.3d at 1283 (quoting *Vila*, 484 F.3d at 1340).

The School District argues a sufficient nexus exists between "the failures of the Tax Commissioner" and the effect those failures had on the Plaintiffs' ability to perform their duties, including preparing an annual budget. (Doc. 26 at 3). The School District asserts the "Plaintiffs' duties, as the highest executives of the District, required them to speak about the deficiencies and to raise the awareness of both the Board of Education

and the general public in order to correct the problem." (Doc. 26 at 3). "In fact," the School District continues, "if a school superintendent and assistant superintendent were to be aware of deficient tax collection that harmed a school district **and** failed to speak out about the issue, they would be derelict in performing their duties." (Doc. 26 at 3).

The School District cites several cases to show the Plaintiffs were required to speak out on deficient tax collection as part of their employment duties. In *Battle v. Board of Regents of Georgia*, the plaintiff, a university financial aid counselor, received notice her contract would not be renewed after she reported fraudulent practices in the federal work study program to her supervisors and the university's president. 468 F.3d 755, 757-59 (11th Cir. 2006). The Eleventh Circuit held the plaintiff was not speaking as a citizen because she admitted she had a duty to report any fraud in the student financial aid files, and federal guidelines required financial aid workers to report suspected fraud. *Id.* at 761. In *Vila*, the plaintiff was a licensed attorney serving as a college's vice president of external affairs and voiced complaints of illegal behavior by the college's president to others within the college and to a former trustee of the college. 484 F.3d at 1336-38. The court held the plaintiff's complaints were not those of a citizen because she was "directly in charge of legal affairs and it was her duty to ensure the College followed all laws[,]" and all of her statements concerned the legality of the college's actions.[4]  *Id.* at 1339.

---

[4] Notably, the court analyzed the plaintiff's statement made to the former trustee, who was no longer associated with the college, separately from those statements made to employees of the college. *Vila*, 484 F.3d at 1340. Although the statement to the former trustee was not made pursuant to her official job duties, the court held the statement was not protected by the First Amendment because it was made privately to seek guidance on how the plaintiff should deal with the college's actions. *Id.* Although the statements at issue here were made in three different forums, the School District does not analyze them separately. Based on the sparse record here, however, the Court need not engage in a more detailed

Unlike the Plaintiffs here, the plaintiffs in *Battle* and *Vila* reported fraud or illegal conduct by their public employers, rather than a separate public office, and the requirement to report such fraud fell squarely within their explicit job duties.[5]  Further, the School District provides no support for its bare assertions that the Plaintiffs were required to privately or publicly report deficient tax collection rates.  Nor does, as the School District argues, the Plaintiffs' complaint admit they had a duty to engage in this speech.  The duty the Plaintiffs concede they had was to prepare a budget and oversee the fiscal matters of the School District, not to oversee the Tax Commissioner.  The Plaintiffs also argue the duties to oversee the Tax Commissioner and report deficient tax collection belong to the Georgia Department of Audits and Accounts, and the Plaintiffs' speech did not owe its existence to the School District because information about the deficient tax rates was publicly available in annual reports published by the Department of Audits and Accounts.

Even though the Plaintiffs did not have an explicit duty to communicate with the Tax Commissioner, the School District contends this was an implicit duty because the Plaintiffs could not perform their listed duty to prepare the school system's budget without reporting deficient tax collection rates.  The School District contends the "Plaintiffs' position is no different from the principal in"[6] *D'Angelo v. School Board of Polk County, Florida*, who lobbied to convert his school to charter status and was

---

analysis based on this distinction because the Court cannot presently conclude as a matter of law that any of the Plaintiffs' statements were made pursuant to their official duties.

[5] The School District concedes that if the Plaintiffs criticized a government office with no relation to or direct effect on the School District, then perhaps the Plaintiffs would have a valid point that such criticism did not fall within their employment duties.

[6] Doc. 26 at 6.

terminated because the school board disapproved of that status.  497 F.3d 1203, 1206-07 (11th Cir. 2007).  The court found the plaintiff was not speaking as a citizen because his pursuit of charter status, although not a listed job duty, helped him achieve his explicit job duty to explore all possibilities of improving the quality of education at the high school.  *Id.* at 1210.

However, this holding was contingent on the court's finding that the plaintiff applied for charter status only in his capacity as a principal, and no evidence suggested the plaintiff was also a parent or teacher, who were permitted to apply for charter status as well.  *Id.*  Thus, the Eleventh Circuit has indicated situations may arise where public employees speak about the subject matter of their employment in a capacity separate from their job titles.  *See id.*; *accord Garcetti*, 547 U.S. at 421 ("The First Amendment protects some expressions related to the speaker's job.").  The Court is not convinced, based on the limited record before it, there is a sufficient nexus between the operations of the Tax Commissioner's office and the activities of the School District to conclude the Plaintiffs' speech was within their employment duties.

Because there is no indication the Plaintiffs spoke pursuant to their explicit or implicit job duties, the Court looks to "the content, form, and context of a given statement, as revealed by the whole record" to determine whether the Plaintiffs spoke as citizens on a matter of public concern.  *Abdur-Rahman*, 567 F.3d at 1283 (quoting *Vila*, 484 F.3d at 1340).  "In doing so [the Court must] ask: whether the 'main thrust' of the speech in question is essentially public in nature or private, whether the speech was communicated to the public at large or privately to an individual, and what the speaker's motivation in speaking was."  *Mitchell*, 468 F.3d at 1283 (internal citations omitted).

"In assessing the content of a public employee's speech, we look to whether the speech communicates a 'subject of legitimate news interest [,] a subject of general interest and of value and concern to the public at the time[.]'"  *Id.* at 1284 (quoting *City of San Diego*, 543 U.S. at 84).  The Plaintiffs argue their speech was not limited to the subject matter of their jobs because it was speech directed at and critical of "an entirely separate office headed by a separately elected constitutional officer."  (Doc. 24 at 7).  Their speech was aimed at "putting pressure on the Tax Commissioner to properly fund" the school system and "encourag[ing] government in Hancock County to operate more efficiently and effectively."  (Doc. 24 at 11).

"Exposing governmental inefficiency and misconduct is a matter of considerable significance."  *Garcetti*, 547 U.S. at 425.  In addition to exposing government misconduct, the administration of local taxes and the effect insufficient taxes have on the quality of education provided by local public schools are certainly matters of public concern, particularly for local property owners and parents with children enrolled in those schools.  *See Pickering*, 391 U.S. at 571-72 ("[T]he question whether a school system requires additional funds is a matter of legitimate public concern[,]" and "free and open debate is vital to informed decision-making by the electorate.").

While "[a] 'public employee may not transform a personal grievance into a matter of public concern by invoking a supposed popular interest in the way public institutions are run[,]'" a review of the Plaintiffs' allegations shows the Plaintiffs have sufficiently pled their statements were not mere "personal grievances and frustrations with their jobs" resulting from perceived "mismanagement of *internal* administrative affairs." *Boyce v. Andrew*, 510 F.3d 1333, 1344-45 (11th Cir. 2007) (emphasis added) (quoting

*Ferrara v. Mills*, 781 F.2d 1508, 1516 (11th Cir. 1986)).  Rather, the Plaintiffs allege they complained about an external source of mismanagement which caused "detrimental ramifications" to the School District.  (Doc. 1 at ¶ 13).  The fact that mismanagement in the Tax Commissioner's office also had a significant impact on the Plaintiffs' ability to perform a listed job duty is not dispositive of their retaliation claim.

The Plaintiffs also argue the diversity of forums they used shows they were acting outside of their capacities as employees.  The Plaintiffs' speech was communicated primarily to the public through a state-wide newspaper and at public Board of Education meetings.  While some of the communications to the Tax Commissioner's office appear to have been private, the Court must still look at the Plaintiffs' motivation for that communication.  Unlike the plaintiff in *Vila*, the Plaintiffs here were not seeking the Tax Commissioner's guidance on how to best deal with fraud at their place of employment, but rather, they were criticizing his job performance and pointing out the detrimental effect his actions had on the local school system.  *See* 484 F.3d at 1340.  While speech that occurs outside of the work environment is not conclusively a matter of public concern, speech that is communicated to the general public weighs in favor of finding the employee was speaking as a citizen.  Further, the fact that the Plaintiffs made their statements primarily in public supports the inference the Plaintiffs' motivation "was to raise issues of public concern" and not "solely in order to further [their] own employment interest[s]."  *Boyce,* 510 F.3d at 1344-45.

Accordingly, the Court finds the Plaintiffs have sufficiently alleged they were speaking as citizens on a matter of public concern and not pursuant to their official duties.  Because the School District has not argued its interest as an employer

outweighed the Plaintiffs' interests as citizens, the Court will not analyze whether the Plaintiffs have sufficiently alleged they meet the *Pickering* balancing test.

### III. CONCLUSION

For the foregoing reasons, the Defendants' motion to dismiss is **DENIED**.

**SO ORDERED,** this 27th day of January, 2014.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT
